Mary Ruth PARRISH, Appellee,

v.

IMMANUEL MEDICAL CENTER,
Appellant.

No. 95–3514.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1996.

Decided Aug. 14, 1996.

Rehearing Denied Sept. 13, 1996.

J. Russell Derr, Omaha, NE, argued (Soren S. Jensen, on the brief), for appellant.

Andrew Stevenson Bogue, II, Omaha, NE, argued, for appellee.

Before BEAM and MURPHY, Circuit Judges, and NANGLE,* District Judge.

BEAM, Circuit Judge.

Mary Ruth Parrish brought suit against Immanuel Medical Center (Immanuel) alleging discrimination based on age and disability in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Nebraska Fair Employment Practice Act (NFEPA), Neb.Rev.Stat. § 48–1101 et seq. A jury awarded Parrish $21,218.15 in compensatory damages. Based on the jury's finding that Immanuel willfully violated the ADEA, the district court[1] determined that Parrish was entitled to liquidated damages and accordingly entered final judgment for Parrish in the amount of $42,436.30. The district court denied Immanuel's post-trial motions for judgment as a matter of law

or a new trial, and Immanuel appeals. We affirm.

## I. BACKGROUND

Parrish was hired as a part-time registrar in Immanuel's patient admitting department in 1979, when she was fifty-seven years old. As a registrar, Parrish's responsibilities included receiving patients into the hospital, obtaining information from patients for hospital records, taking reservations from doctors for patient admittance, and responding to public inquiries. In 1985, computers were installed in the admitting department to assist the registrars in their work. All registrars, including Parrish, received extensive computer training at that time. Parrish had no reported difficulties adjusting to the computers. In fact, Parrish's job evaluations indicated that she performed all aspects of her job to the satisfaction of her superiors. During her ten years of employment at Immanuel, she received no negative evaluations and largely positive comments from her supervisors, save for an admonishment to refrain from criticizing fellow employees in the department. Although Parrish was slower in admitting patients than many of the other registrars, she was also one of the most accurate workers in the department.

In 1990, Immanuel implemented a new computer system at the hospital. The new system brought significant changes, and therefore required re-training of all registrars. Each employee was to receive eight hours of hands-on training in two separate sessions. Parrish attended her first day of this training on May 3, 1990, and was scheduled to participate in a second session on May 4. On that day, however, Parrish was hospitalized at Methodist Richard Young Mental Health Care Center for depression and anxiety. She remained at that facility until May 18, and was advised by her physician not to return to work until at least June 4, 1990. During Parrish's absence, her physician wrote a letter to Immanuel explaining her condition and his recommendation that she return to her job.

* The HONORABLE JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

Parrish returned to work on June 7, 1990. Immediately upon her return, Department Manager Linda Erickson met with Parrish. Erickson informed Parrish that she would not be returning to her regular duties as a registrar but would instead be assigned to a newly created position. The position would require Parrish to work five days a week from 4:00 p.m. to 8:30 p.m., and thus involved later hours than those Parrish worked under her regular schedule.

The details of this new position were vigorously contested by the parties at trial. According to Immanuel, Parrish was asked to fill an "auditing position"—a position which would utilize Parrish's accuracy by giving her the responsibility of checking the work done by other registrars. According to Parrish, however, Erickson explained that the new job would involve assembling and stapling the papers of patient accounts. These accounts normally included between four and ten sheets of paper. The process of assembling those papers would normally take only one or two minutes per patient. Parrish testified that Erickson made it clear she would no longer be working with patients or with the computer. She also testified that during this meeting Erickson made frequent references to Parrish's alleged problems with the new software system and to her inefficiency as a registrar. On at least one occasion, Erickson was said to have commented that even younger registrars were having problems with the new computers.

The parties agree that Parrish was not given the option of returning to her position as a part-time registrar. Erickson presented the offer to transfer as an all-or-nothing proposition. After the meeting, Parrish completed her work day. The following day, Parrish did not report to work but instead called Erickson to ask her to reconsider her decision to transfer Parrish. Erickson refused the request and Parrish resigned her position with Immanuel. At that time, Parrish was sixty-six years old and the oldest registrar in the department. Following Parrish's resignation, other registrars in the department assumed her responsibilities in admitting. The new position proposed by Erickson was never filled.

Parrish sued Immanuel, alleging that she was constructively discharged because of her age and her disability. At trial, Parrish submitted evidence regarding her work record and the events prompting her resignation. Parrish also presented evidence that at the time of the proposed transfer, Immanuel maintained a policy mandating retirement at age seventy. Finally, there was undisputed testimony that in the spring of 1990 two other employees in the admitting department had been asked to retire.

In response to this evidence, Immanuel contended that it legitimately sought to transfer Parrish because of her inefficiency and her difficulties with the new computer system. The jury rejected Immanuel's explanation and found that Immanuel had discriminated against Parrish due to her age and disability. On appeal from the district court's denial of Immanuel's motion for judgment as a matter of law or a new trial, Immanuel argues, among other things, that: (1) Parrish was not constructively discharged; (2) there was insufficient evidence to support a finding of age discrimination; (3) Parrish's disability claim was time-barred and not supported by sufficient evidence; (4) Parrish failed to mitigate her damages; (5) any violation of the ADEA was not willful; and (6) the jury was improperly instructed as to the requirements of a prima facie case of discrimination.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

In reviewing a denial of a motion for judgment as a matter of law, we must determine whether there is sufficient evidence to support a jury verdict. *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992). In making this determination, we must: (1) consider the evidence in the light most favorable to Parrish; (2) assume that all conflicts in the evidence were resolved in favor of Parrish; (3) assume as proved all facts that Parrish's evidence tended to prove; and (4) give Parrish the benefit of all favorable inferences that may reasonably be drawn from the facts. *See id.* at n. 4. We must affirm a denial of a

motion for judgment as a matter of law if reasonable persons could differ as to the conclusions to be drawn from the evidence. *See Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1108 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994).

### 1. Constructive Discharge

■■■ Immanuel first argues that the district court should have granted its motion for judgment as a matter of law because the evidence does not support the jury's finding that Parrish was constructively discharged. Both the ADEA and the NFEPA prohibit employers from making adverse employment decisions, such as terminations or demotions, on the basis of age or disability. Accordingly, since Parrish *resigned* her position at Immanuel, she may only recover if she demonstrates that Immanuel's actions constituted a constructive discharge.

■■■ Constructive discharge occurs when "an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981) (internal quotation and citation omitted). Intolerability of conditions is judged by an objective standard, and thus requires a showing that a reasonable person in the employee's situation would find the conditions intolerable. *Hukkanen v. International Union of Operating Eng'rs*, 3 F.3d 281, 284 (8th Cir.1993). Moreover, in order to constitute constructive discharge, the employer's actions must have been intended to force the employee to quit. *Id.* A plaintiff may satisfy this intent requirement by showing that her resignation "was a reasonably foreseeable consequence of [her] employer's discriminatory actions." *Id.* at 285.

Applying these standards, we conclude that Parrish has presented sufficient evidence from which a reasonable jury could conclude that she was constructively discharged. At trial, Parrish testified extensively regarding the duties of the proposed position. She testified that she was informed her new position would require coming into work at the end of the day to assemble patient records other registrars had left unassembled—a task which takes only a few minutes per patient. Immanuel did not contest the fact that prior to the proposed transfer these duties were handled by the registrar who had admitted the patient. Nor did it dispute that after Parrish's resignation, file assembly was handled by Immanuel's telephone operators during their spare time. From this evidence a reasonable jury could conclude that Parrish's new position would consist of work which a reasonable employee in Parrish's position would find demeaning and intolerable.

Parrish also demonstrated that her resignation was a reasonably foreseeable consequence of Immanuel's actions. The new position required Parrish to work later hours, and Parrish adduced evidence that her supervisors knew she did not feel comfortable returning home from work after dark. Moreover, Parrish's immediate supervisor, Ramona Gaskill, testified that she informed Erickson that Parrish would not take the proposed transfer. Under the circumstances, Parrish has met her burden of proving constructive discharge. Therefore, the district court properly denied Immanuel's motion for judgment as a matter of law on this ground.

### 2. Age Discrimination

■■■ Immanuel next argues that even if Parrish was constructively discharged, there is insufficient evidence to support the jury's finding that Immanuel discriminated against Parrish because of her age. In a disparate treatment case based on age discrimination, courts apply the shifting burdens analysis first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1164 (8th Cir.1985) (*McDonnell Douglas* guidelines apply to ADEA cases). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of age discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). The prima facie case " 'creates a presumption that the employer unlawfully discriminated against the employee' " and places on the

defendant "the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *Id.* at 506–07, 113 S.Ct. at 2747 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). If the defendant carries this burden of production, the presumption of discrimination is rebutted and drops from the case. *Id.* at 507, 113 S.Ct. at 2747. At that point, the plaintiff may attempt to demonstrate that the proffered reasons were a pretext for discrimination. *Id.* At all times, the plaintiff bears the ultimate burden of persuading the jury that she has been the victim of intentional discrimination. *Id.* at 508, 113 S.Ct. at 2748.

 On an appeal after trial, however, we focus our inquiry on the ultimate factual issue of whether the employer intentionally discriminated against the employee rather than on the sufficiency of a party's showing at any particular stage of the *McDonnell Douglas* analysis. *Morgan v. Arkansas Gazette,* 897 F.2d 945, 948 (8th Cir.1990).[2] After reviewing the record, we are satisfied that there is sufficient evidence to support the jury's finding of age discrimination. First of all, Parrish produced ample evidence from which a reasonable jury could conclude that Immanuel's stated reasons for transferring Parrish were pretextual. Immanuel alleges that Parrish was inefficient, slow, and incapable of adjusting to the new computers. Parrish proved, however, that she was an accurate and reliable employee during her ten years at Immanuel. She consistently received above average ratings on her yearly evaluations. Although her rate of production was slower than the average registrar, Gaskill did not think the problem significant enough to warrant more than a single comment. Moreover, there was undisputed evidence that Parrish was given only one day of training on the new computer system, and that all of the trainees were helping each other learn the new software on the first day of training. Several witnesses testified that they did not recall Parrish having significant problems learning the new system.

 In addition to the evidence discrediting Immanuel's proffered reasons for the transfer and constructive discharge, Parrish presented evidence regarding Immanuel's mandatory retirement policy. Although Immanuel claimed that the policy had never been enforced, Parrish countered with testimony from Louise Mollak, a fellow registrar who left Immanuel in 1990 at the age of seventy-seven after being told that it was time to retire. In an employment discrimination case, where the plaintiff faces the difficult task of establishing an employer's motive, such evidence provides valuable circumstantial proof of an atmosphere of age bias and an employer's unlawful intent. *Hawkins v. Hennepin Technical Ctr.,* 900 F.2d 153, 155 (8th Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

 Erickson's comment to Parrish that even "younger registrars" were having difficulty with the computers also supports the jury's verdict. As the Supreme Court has noted, "[i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that pro-

---

2. Despite our cases explaining that once a finding of discrimination has been made the *McDonnell Douglas* presumptions "fade away", *see Morgan,* 897 F.2d at 948, Immanuel continues to argue that Parrish's prima facie case was deficient. Immanuel asserts that Parrish was required to show that Immanuel replaced her with a younger employee. Although we have often held that a plaintiff may establish a prima facie case by showing replacement by a younger person, we have also adhered to the rule that the elements of a prima facie case vary with the circumstances of the alleged discrimination. *See, e.g., McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994). The United States Supreme Court recently reaffirmed this principle in *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), when it held that a prima facie case requires only that a plaintiff produce "'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310 (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). In this case, Parrish's evidence was more than sufficient to raise such an inference. Therefore, we decline to deviate from our task on appeal of determining whether the evidence is sufficient to support the jury's finding of unlawful discrimination.

ductivity and competence decline with old age." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). The ADEA was enacted to combat stereotypes regarding the ability of older employees to keep pace with changes in the work place. *See id.* From Erickson's comments comparing Parrish's ability to learn computers to the abilities of younger registrars, reasonable minds could infer that Erickson's decision to create the new position for Parrish was based on such stereotypes.

In summary, Parrish produced ample evidence from which a jury could conclude that Immanuel constructively discharged Parrish not for its proffered reasons but because of her age. Consequently, the district court properly denied Immanuel's motion for judgment as a matter of law with respect to Parrish's age claim.

### 3. Disability Discrimination

Immanuel also challenges the district court's denial of its motion for judgment as a matter of law on Parrish's disability claim, attacking that decision on three fronts. First, Immanuel contends that the district court had no jurisdiction to hear Parrish's disability claim under the NFEPA because she failed to timely file the requisite administrative charge of discrimination with the Nebraska Equal Opportunity Commission. Second, Immanuel argues that Neb.Rev.Stat. § 20–148, which allows individuals to sue private companies for deprivations of rights secured by Nebraska laws, does not provide an independent cause of action for alleged disability discrimination. Third, Immanuel asserts that, even assuming the claim was properly presented, there is insufficient evidence to sustain the jury's verdict with respect to disability discrimination.

■■■ We need not decide whether Parrish's charge of disability discrimination pursuant to the NFEPA should be deemed timely because, subsequent to argument in this case, the Nebraska Supreme Court held in *Goolsby v. Anderson,* 250 Neb. 306, 549 N.W.2d 153 (1996), that § 20–148 provides an independent cause of action for violations of the NFEPA. Section 20–148 provides:

> Any person or company ... who subjects or causes to be subjected any citizen of this state ... to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action. ...

As the Supreme Court noted in *Goolsby,* this statute was enacted "to provide an alternative remedy for plaintiffs who otherwise would be trapped in bureaucratic backlogs such as the one at NEOC." *Id.* 549 N.W.2d at 157. Therefore, a plaintiff suing under section 20–148 may bring a cause of action to enforce the rights secured by the NFEPA without first exhausting the administrative remedies prescribed by the Act.

Here, Parrish has taken precisely that approach. Parrish has brought a cause of action under section 20–148, alleging that Immanuel deprived her of her right to be free of discrimination due to disability as provided for by the NFEPA. As *Goolsby* points out, Parrish need not seek redress for the alleged discrimination exclusively under the NFEPA, but may elect to pursue an immediate remedy in the courts through section 20–148. Thus, Parrish has a proper cause of action for disability discrimination.

■■■ Since Parrish has brought a viable disability discrimination claim, the question becomes whether sufficient evidence supports the jury's finding that Parrish was the victim of intentional discrimination based on her depression and anxiety. We conclude that the verdict is adequately supported. Initially, Parrish established sufficient evidence that she was protected within the meaning of the NFEPA as it was in effect at the time of Parrish's constructive discharge. At that time, a qualifying disability under the Act included a "physical or mental condition of a person which constitutes a substantial handicap, as determined by a physician, but is unrelated to such person's ability to engage in a particular occupation." Neb.Rev. Stat. § 48–1102(8) (Reissue 1988). Parrish submitted testimony from her treating physician at Methodist Richard Young Mental Health Care Center that her anxiety and depression constituted a "substantial handicap," but that she was capable of returning

to her job as a registrar provided she continued her medication and therapy. This evidence, together with the evidence establishing that Parrish was qualified for the job as registrar but was constructively discharged, was adequate to establish protection under the statute.[3]

In response to this evidence, Immanuel again claimed that Parrish was transferred for the legitimate reason that she was inefficient and incapable of learning the new computer system. As explained earlier, Parrish produced sufficient evidence disproving Immanuel's proffered explanation. In addition, Parrish produced evidence indicating that she was in regular contact with her supervisors at Immanuel regarding her treatment at Richard Young. Most important to Parrish's case, however, was her cross-examination of Erickson. At trial, Erickson initially denied that Parrish's diagnosis of depression and anxiety had an effect on her decision to reassign Parrish. Parrish's counsel impeached Erickson on this point with Erickson's deposition testimony. During her deposition, Erickson admitted that in making her decision to transfer Parrish, Erickson was perhaps "overly sympathetic to [Parrish's] needs, just coming out of a facility such as Richard Young." Jt.App. at 429–30. Such a statement permits an inference that Parrish's disability played a role in the decision to reassign her, and at this stage we must assume that the jury resolved the conflicts in Erickson's testimony in favor of Parrish. Thus, although it is a close question, we agree with the district court that under the circumstances of this case the evidence was sufficient to permit a reasonable jury to conclude that Immanuel constructively discharged Parrish because of her disability.

### 4. Mitigation of Damages

Immanuel further argues that Parrish's award of back pay should be reversed because Parrish failed to mitigate her damages. According to Immanuel, Parrish was offered a job as a registrar at Methodist Hospital in Omaha, Nebraska (also the site of Immanuel Medical Center) at the same rate of pay, but declined to accept it. Immanuel contends that Parrish's rejection of that job constitutes a willful loss of earnings which precludes an award of back pay.

Once unlawful discrimination has been found, back pay should usually be awarded in furtherance of the ADEA's goal to "make whole" persons who suffer loss due to discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Nevertheless, a plaintiff must mitigate her damages or face a reduction in such an award. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982). As the United States Supreme Court explained in *Ford Motor Co.*, this duty requires the claimant to use reasonable diligence in finding other suitable employment. *Id.* Although the unemployed claimant need not "go into another line of work, accept a demotion, or take a demeaning position," she forfeits her right to back pay by refusing a job "substantially equivalent" to the one from which she was discharged. *Id.* at 231–32, 102 S.Ct. at 3065–66.

The evidence at trial showed that after Parrish's constructive discharge she made several attempts to obtain employment. She was offered two positions: a position selling candy at Sears and the position at Methodist Hospital. The position at Methodist would have required Parrish to spend the majority of her hours in emergency admissions. The undisputed evidence at trial, however, was that Parrish had had almost no contact with emergency patients during her tenure as an admitting clerk at Immanuel. As a registrar, she admitted patients referred by physicians and patients reporting for planned procedures, not those brought into the hospital under emergency conditions. Additionally, Parrish testified that she had always had a difficult time dealing with the trauma associated with emergency patients, and that she was concerned her depression and anxiety could be aggravated working under those conditions.

Given the significant differences in the conditions and the day-to-day activities of a

---

3. In arguing for reversal of the district court's decision on this claim, Immanuel repeats its argument that Parrish's claim should fail for lack of a showing that she was ever replaced. For the reasons stated previously, we find this argument meritless.

person in emergency admissions and those encountered by Parrish as a registrar at Immanuel, reasonable minds could conclude that the position offered by Methodist Hospital was not substantially equivalent to the position from which Parrish was discharged. Given the other good faith efforts which Parrish made to find employment, the district court did not err in denying Immanuel's motion for judgment as a matter of law on this issue.

### 5. Liquidated Damages

 Immanuel next contends that there was insufficient evidence to support the jury's finding that Immanuel willfully violated the ADEA. Under the ADEA, a plaintiff is entitled to liquidated damages if the employee can prove that the employer willfully violated the statute. 29 U.S.C. § 626(b). A violation of the ADEA is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co.*, 507 U.S. at 617, 113 S.Ct. at 1710.

The evidence in this case adequately supports a finding that Immanuel willfully violated the ADEA. Considering the evidence in the light most favorable to Parrish and giving her the benefit of all favorable inferences, the evidence shows that Immanuel's management implemented a mandatory retirement policy several years after Congress's enactment of the ADEA. Shortly after implementation of this policy, two employees in the admitting department were asked to retire. Thereafter, Erickson sought to transfer Parrish, who was the oldest employee in the department at the time. Before making the transfer, Erickson discussed her plans with Frank Fischer, Immanuel's Human Resources Director. As a Human Resources Director, Fischer was responsible for supervision of all human resource matters including, it can be inferred, compliance with employment discrimination laws. Fischer's testimony suggested he knew that Parrish was one of the older employees in the department, yet he made no independent investigation of Erickson's representations regarding Parrish's work in the admitting department. Nor did Fischer investigate following Parrish's resignation, even though he admitted he was surprised to hear of her reaction to the proposed transfer. Given these facts, a reasonable jury could have concluded that Immanuel knew of the ADEA and recklessly disregarded its provisions in dealing with Parrish. Consequently, the district court did not err in refusing to vacate its award of liquidated damages.

### B. Motion for a New Trial

 Immanuel also argues that a new trial is warranted because of error in the jury instructions and evidentiary rulings. We review the denial of a motion for a new trial for an abuse of discretion. *See, e.g., Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 800 (8th Cir.1994). We have considered Immanuel's arguments and find no abuse of discretion by the district court. Therefore, we affirm the district court's denial of Immanuel's motion for a new trial.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.