**Eric CRAWFORD, Appellant,**

v.

**Marvin T. RUNYON, Postmaster General, United States Postal Service, Appellee.**

No. 94–1710.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Oct. 14, 1994.

regulate odors. This opinion does not address that question.

Michael Bastian, St. Louis, MO, argued, for appellant.

Eric T. Tolen, St. Louis, MO, argued (R. Andrew German and Brian M. Reimer, Washington, DC, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and BEAM, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

Eric Crawford, a former mailhandler for the U.S. Postal Service, appeals the summary judgment entered against him in this "mixed case" action. The Postal Service fired Crawford, and the Merit Systems Protection Board (MSPB) affirmed the removal. After exhausting his administrative remedies, Crawford brought this suit seeking review of the MSPB's decision pursuant to 5 U.S.C. §§ 7702(b)(5)(A) and 7703(b)(2), and claiming that the Postal Service discriminated against him in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* The District Court granted summary judgment for the Postmaster General on both counts. We affirm in part and reverse in part.

## I.

Crawford, a Vietnam veteran with a prior history of depression and stress-related mental disorders, was hired by the Postal Service under its veterans' preference policy. He worked as a mailhandler at the St. Louis Main Post Office from September 1986 until his discharge in August 1989.

The Postal Service claims that it fired Crawford for threatening his supervisor and being unfit for duty. It points to two incidents where Crawford allegedly threatened to hurt or kill his supervisor and to the opinion of the Postal Service's medical officer that Crawford was unfit for duty and a danger to others. Crawford claims that he never threatened anyone at work, that the Postal Service's medical officer was not qualified to make psychiatric evaluations, and that qualified physicians had declared him to be fit for duty and no danger to others. Indeed, he contends that his supervisors lied about the alleged threats in a campaign to set him up for termination.

On February 12, 1989, Crawford had a heated argument with Daniel Slinger, one of his supervisors. Another of Crawford's supervisors, Charles Musgrave, discussed the incident with Crawford afterwards. During the discussion, Crawford mentioned his bouts of depression, and Musgrave asked him

about it. Crawford told Musgrave that his doctors had told him to stay home whenever he felt he might hurt or kill someone. Musgrave took Crawford's statements seriously and asked in a memorandum to the Tour Manager that Crawford be scheduled for a fitness-for-duty examination to determine the probability that he might actually harm someone.

Instead, Crawford voluntarily checked into a local hospital the next day for a psychiatric evaluation. His examining physician, Dr. Karen Boesch, diagnosed him as suffering from major depression and paranoid schizophrenia. She noted that Crawford had both suicidal and homicidal thoughts due to his increased frustrations at work, and recommended that he be given less stressful tasks at the Post Office. After a two-week hospital stay, Dr. Boesch found that Crawford was fit to return to work.

The Post Office reassigned Crawford to a less stressful work environment where he would have a minimum of contact with other employees. Crawford claims that when his supervisors found out about his voluntary hospitalization, they decided, out of fear and a misunderstanding of the nature of his illness, to get rid of him. On April 6, 1989, Musgrave allegedly circulated a newspaper story about a paranoid psychotic who hacked ferry-boat passengers to death with a sword, with the notation in the margin that "This man apparently has the same illness as Mr. Crawford." According to Crawford, a few days later one of his supervisors, Perry Strong, used a meeting about Crawford's vacation schedule to question him about his illness and his hospitalization. He told Strong that his counselors at the VA had told him to seek treatment if he had any thoughts of hurting others, but denies that he said anything about wanting to hurt anyone at work.

As one would expect, the Postal Service has a different version of events. It claims that there was another incident between Slinger and Crawford, and that Strong met with Crawford to discuss it. Crawford allegedly declared—in front of both Strong and Slinger—that he felt he might kill or harm Slinger if he had to continue working with

him. Strong memorialized the discussion with a handwritten memorandum, and the next day the Tour Manager placed Crawford on immediate administrative leave.

On June 1, 1989, the Postal Service's medical officer, Dr. Philip Shanahan, concluded that Crawford was not fit for duty. He based his decision on a psychiatric evaluation written by Dr. Boesch at the time of Crawford's voluntary hospitalization in February and on the two memoranda detailing the alleged incidents between Crawford and Slinger. Lottie Shannon, Crawford's immediate supervisor, issued a notice of proposed removal, and the Tour Manager sustained the removal.

Crawford appealed the Post Office's action to the Merit Systems Protection Board, which affirmed his removal. Having exhausted his administrative remedies, he filed this suit in the District Court, claiming discrimination violative of the Rehabilitation Act and seeking review of the administrative decision pursuant to 5 U.S.C. §§ 7702(b)(5)(A) and 7703(b)(2). The District Court granted summary judgment for the Postmaster General, concluding that Crawford failed to show that the Postal Service's stated reason for firing him was a pretext for discrimination or that the MSPB's decision was arbitrary and capricious or an abuse of discretion.

## II.

■ We review a grant of summary judgment by applying the same standard as the District Court. *Bieter Co. v. Blomquist,* 987 F.2d 1319, 1320 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 50 (1993). In a mixed case like this, the adverse agency action is reviewed on the administrative record, while the discrimination claim is reviewed *de novo. Romain v. Shear,* 799 F.2d 1416, 1421 (9th Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987).

■ The District Court correctly held that Crawford failed to show that the MSPB's decision was an abuse of discretion. Under 5 U.S.C. § 7703(c), the administrative decision must be affirmed unless it was arbitrary, capricious, an abuse of discretion, pro-

cedurally infirm, or not supported by substantial evidence. A review of the record before the MSPB shows that there was evidence that, if credited, supported the ALJ's conclusion that plaintiff had threatened to harm or kill his supervisor and was unfit for duty. Credibility determinations are, of course, normally within the discretion of the ALJ who hears the case. *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985). The ALJ's decision was based on substantial evidence, and was not arbitrary, capricious, or an abuse of discretion; the District Court's holding to that effect is affirmed.

### III.

■ In reviewing the discrimination claim *de novo,* we keep in mind the caution that summary judgment should seldom be used in employment-discrimination cases. *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hildebrand v. M–Tron Industries, Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Summary judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244. Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant. *Id.*

■ Rehabilitation Act discrimination cases are analyzed under the burden-shifting method of proof first described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *Teahan v. Metro–North Commuter R.R., Co.,* 951 F.2d 511, 514 (2d Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992). That three-step process requires plaintiff to establish a prima facie case of handicap discrimination by showing that plaintiff is a member of a protected class and that defendant took an adverse employment action against plaintiff in circumstances that raise an inference of unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant must then

respond by offering a legitimate, nondiscriminatory reason for its adverse employment action. Once the defendant articulates such a reason, the burden is on the plaintiff to show that the defendant's stated reason is merely a pretext for its discrimination. *Id.* at 804–05, 93 S.Ct. at 1825–26.

■ We agree with the District Court that Crawford established a prima facie case of handicap discrimination, and that the Postal Service offered a legitimate, nondiscriminatory reason for firing him. We do not agree, though, that there was no genuine issue of material fact regarding pretext.

■ Plaintiff contends that his supervisors conspired to get rid of him, lied about his alleged threats, and distorted his medical condition. In support, he offered his affidavit denying that he ever threatened to hurt or kill any postal employee, letters that had been filed with the Postal Service from treating professionals declaring him to be fit for duty and no danger to himself or others, and a copy of the annotated newspaper article that Musgrave allegedly circulated.

If we credit plaintiff's affidavit—as we must on a motion for summary judgment—then it is reasonable to infer that his supervisors lied or exaggerated in their reports alleging that he threatened to harm his supervisor. Since both the opinion of the Postal Service's medical officer and the decision to remove plaintiff were based on those reports, both would be tainted by any discriminatory motive behind the supervisors' alleged lies. See *Kientzy v. McDonnell Douglas Corp.,* 990 F.2d 1051, 1057 (8th Cir.1993) (defendant in Title VII case liable where neutral decisionmaker fired plaintiff based on discriminatory supervisor's report).

The Postal Service contends that plaintiff really did threaten to harm his supervisor and that the reports accurately reflect this. That is, of course, the issue: if plaintiff did threaten his supervisor, then defendant had a legitimate reason for firing him, but if plaintiff did not, then defendant's stated reason is merely a pretext that may be masking a discriminatory motive. This is a factual dispute whose resolution will depend significantly on credibility.

In the face of this genuine factual dispute, summary judgment on the discrimination claim was inappropriate. Accordingly, we reverse the District Court's judgment on the Rehabilitation Act claim and remand the case for further proceedings on that claim. The portion of the judgment upholding the MSPB's determination is affirmed.

It is so ordered.