Renee C. DELASHMUTT, Plaintiff,

v.

WIS–PAK PLASTICS, INC., an Iowa
corporation, and Frank Filson,
individually, Defendants.

No. C 96–4057–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 14, 1998.

Sam S. Killinger, Rebecca A. Nelson of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Souix City, IA, for Plaintiff.

James R. Scott of Linder & Marsack, S.C., Milwaukee, WI, Gregg E. Williams of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Souix City, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

*I. INTRODUCTION* .................................................691

*II. STANDARDS FOR SUMMARY JUDGMENT* ...............................692

III. FACTUAL BACKGROUND .......................................... 693
    A. Undisputed Facts ................................................ 693
    B. Disputed Facts ................................................. 694

IV. LEGAL ANALYSIS ................................................ 695
    A. Delashmutt's Claims ............................................ 695
    B. Employer Liability For Sexual Harassment ....................... 697
        1. The prompt remedial action requirement ...................... 697
        2. Wis–Pak's response to harassment by Keller ................. 697
    C. Retaliation .................................................... 698
        1. Proof of retaliation ........................................ 698
        2. Delashmutt's evidence of "adverse action" ................... 699
        3. Evidence of pretext ........................................ 701
    D. Constructive Discharge ......................................... 702
        1. Proof of constructive discharge ............................. 702
        2. Delashmutt's evidence of constructive discharge ............. 702

V. CONCLUSION .................................................... 703

The court recognizes the irony that pervades this lawsuit in which an employee complains of retaliation for filing a complaint of sexual harassment when her employer responded to her complaint of harassment by firing her alleged harasser. However, the question before the court is whether, irony aside, there are genuine issues of material fact precluding summary judgment in the employer's favor on the plaintiff's claims of retaliation and constructive discharge.

## I. INTRODUCTION

Plaintiff Renee C. Delashmutt filed this lawsuit on June 13, 1996, against her former employer, defendant Wis–Pak Plastics, Inc., and the director of operations at Wis–Pak's plant in Sioux City, Iowa, defendant Frank Filson. The defendants will be referred to collectively as Wis–Pak unless the context requires otherwise. Delashmutt's complaint alleged, in a single count, violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, in three respects: retaliation for complaints of sexual harassment, which caused a co-worker to be fired; constructive discharge; and allowing a sexually hostile environment to exist in her workplace. This matter is set for jury trial on March 9, 1998.

However, on August 27, 1997, the defendants moved for summary judgment on all of Delashmutt's claims. They assert that there is no genuine issue of material fact that they responded promptly and appropriately to Delashmutt's complaint of sexual harassment by firing the harassing co-worker. They also deny any retaliation, principally on the ground that the reassignment of staff upon which Delashmutt relies did not, as a matter of law, constitute adverse working conditions, and was done for legitimate business reasons, not for retaliation. Wis–Pak also contends that Delashmutt cannot generate any genuine issue of material fact on her retaliation claim that she was "targeted" as the perpetrator of sabotage, as she contends. Furthermore, Wis–Pak asserts that the changes in staffing in Delashmutt's position did not make Delashmutt's working conditions so intolerable that she was forced to quit, such that she cannot sustain her claim of constructive discharge. Thus, Wis–Pak contends that no jury questions are presented and it is entitled to judgment as a matter of law without need of a trial.

Although Delashmutt resisted the motion for summary judgment on September 24, 1997, on all grounds, neither party has requested oral arguments. Therefore, the motion for summary judgment will be decided on the record and written arguments submitted.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of recent decisions. *See, e.g., Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)). *See also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1204 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is therefore appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244. *See also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue

of material fact precluding summary judgment). *Accord Snow*, 128 F.3d at 1204 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow*, 128 F.3d at 1204. *Accord Helfter*, 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995).

These special cautions seem to the court to be no less applicable here to Delashmutt's retaliation and constructive discharge claims, because such claims also often depend upon inferences of the employer's motive, as is shown by application of the same burden-shifting analysis to retaliation claims as is used in discrimination cases, *see Moschetti v. Chicago, Central & Pacific R. Co.*, 119 F.3d 707, 709 (8th Cir.1997) ("The order and allocation of the burden of proof in [a retaliation case under 42 U.S.C. § 2000e–3(a)]" is laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *accord Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997); *Jackson v. Delta Special Sch. Dist. No. 2*, 86 F.3d 1489, 1494 (8th Cir.1996), and the acceptance of inferential proof of intent

in constructive discharge cases). *See Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 354 (8th Cir.1997) ("[I]n the absence of conscious intent [to force the employee to quit], the intention element may nevertheless be proved with a showing that the employee's 'resignation was a reasonably foreseeable consequence' of the [discriminatory or retaliatory conduct]," quoting *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 285 (8th Cir.1993)). The court will therefore keep these special cautions in mind while considering Wis–Pak's motion for summary judgment.

### III. FACTUAL BACKGROUND

#### A. Undisputed Facts

The parties agree that the following facts are undisputed.[1] Defendant Wis–Pak manufactures plastic bottles for the carbonated beverage industry at a plant in Sioux City, Iowa. At all pertinent times, defendant Frank W. Filson was the head of operations at the Wis–Pak plant in Sioux City. Plaintiff Renee Delashmutt began her employment with Wis–Pak in November of 1994 as a machine operator. She was originally a temporary employee, but she became a full-time, permanent employee in March of 1995. Delashmutt worked in the injection molding department at Wis–Pak from April of 1995 until October 13, 1995, when she quit her job. The injection molding department produces "preforms," which are individual plastic pop bottles that have not yet been treated and expanded. The injection molding machines are completely automated. The operator's job is to remove full "gaylords," receptacles for "preforms," and replace them with empty ones, to clear occasional jams, and to keep the area clean. Operators did not perform maintenance work.

In early 1995, two new injection molding machines were added to the department, while one machine was removed, bringing the total number of injection molding machines

---

1. The court has not attempted an exhaustive catalogue of either the undisputed or disputed facts in this case. Rather, the court has attempted to provide an adequate factual background of undisputed facts and sufficient statement of disputed facts to provide a proper context for the legal analysis to follow.

in the department to five. However, for most of the period Delashmutt was working in injection molding, only four, and occasionally only three, machines were actually in operation.[2] At about the same time the new machines were added, four new positions in injection molding were posted, one on each shift. The parties dispute precisely what was the reason for adding the additional employees. Delashmutt bid for and was given one of the new positions, at which time she moved from the day shift to the night shift. Delashmutt's immediate supervisor in her new position was Joyce Swanson.

Delashmutt claims that on August 14 and 15, 1995, she was subjected to improper sexual advances by Scott Keller, a co-employee temporarily working maintenance on the night shift as a vacation fill-in. Delashmutt rejected these advances and reported the incidents to her supervisor, Joyce Swanson. Ten days later, Ryan Brinkman, a management employee responsible for personnel matters at Wis–Pak's Sioux City plant, requested that Delashmutt provide a written statement concerning the incidents. An investigation ensued, which included a meeting by Brinkman with Delashmutt and her husband on August 30, 1995. On August 31, 1995, Keller was given the option of resigning or being fired. Keller resigned.

Delashmutt began a ten-day vacation shortly after Keller resigned. On September 11, 1995, her first shift after her vacation, Delashmutt was informed that Allan Vaul, the employee with whom she had been working in injection molding since July of 1995, had been moved to another part of the plant. Prior to that time, Vaul had been absent from injection molding only sporadically, for example, to cover breaks for employees in other areas. The parties dispute precisely why Vaul was moved out of injection molding and whether Vaul was moved permanently or only temporarily. However, they do not dispute that, after the move, Vaul was training two new employees and that Delashmutt ran the three or four injection molding machines in operation alone for almost the entirety of

each of her shifts. Prior to that time, either Vaul or some other employee had worked the majority of each shift with Delashmutt. Delashmutt made requests for assistance, which she contends went unheeded. Delashmutt also felt stressed by difficulties in keeping up with the machines and keeping her area clean while working by herself. The parties agree that, for about the next two weeks, Delashmutt only had sporadic assistance in injection molding.

On October 5, 1995, Frank Filson posted a notice to all employees urging whoever was tampering with settings on a dryer to stop. The notice did not identify anyone by name as the culprit. However, Delashmutt felt that the notice was directed at her. Delashmutt also felt that her supervisor and other employees on the shift stopped talking to her and suspected her of sabotaging the dryer.

At a meeting in early September of 1995, Frank Filson informed employees that he had an "open door" policy with regard to problems at the plant. In late September or early October, apparently because Delashmutt felt she was not getting any assistance from her supervisors with running the injection molding machines, she attempted to talk to Ryan Brinkman. When Brinkman was not available that day, Delashmutt attempted to bring her complaints to Frank Filson, believing she was using the "open door" policy. Filson, however, told Delashmutt to take her complaints through the chain of command. On October 13, 1995, Delashmutt notified Brinkman that she was resigning, citing "lies" about her, "stress," and "emotional drain," which had arisen since her harassment complaint against Keller.

### B. Disputed Facts

Delashmutt contends that the following facts are disputed, thus precluding summary judgment in Wis–Pak's favor on any of her claims. The questions to be addressed below, in the court's legal analysis, are whether these disputes have "a real basis in the record," see *Hartnagel,* 953 F.2d at 395, and whether they are material under the governing law, such that they preclude summary

---

2. Wis–Pak contends that, according to its records, there was never a time when all five machines were in operation simultaneously while Delashmutt was working in injection molding. Delashmutt does not specifically dispute this contention.

judgment on Delashmutt's hostile environment, retaliation, and constructive discharge claims. *See, e.g.,* FED. R. CIV. P. 56(c); *Celotex Corp.,* 477 U.S. at 322–23; *Anderson,* 477 U.S. at 248; *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 395.

First, the parties dispute whether one or two persons were required to run the injection molding machines if more than three machines were operating on each shift. Delashmutt cites her own difficulties keeping up with more than three machines by herself, testimony of other operators that they rarely worked entire shifts alone, and what Delashmutt believes was the shift supervisors' belief that two people were required in injection molding with the addition of the new machines. Wis–Pak cites primarily Filson's deposition testimony that one person could adequately operate as many as seven or eight machines, and the fact that, prior to April of 1995, only one person was employed in injection molding when four machines were available. The parties dispute whether Delashmutt was ever required to run more than four machines by herself.

The parties consequently dispute why another person was added to injection molding on each shift after the number of machines was increased to five. Delashmutt contends that the positions were posted as injection molding jobs and that the reason was that the supervisors felt two people would be. required when the number of machines was increased to five. Wis–Pak contends that the second person was only nominally assigned to injection molding for book-keeping purposes, but that person was intended to "float" to all areas of the plant as needed. The parties also dispute how much of the time injection molding machine operators on all shifts actually had assistance and how much of the time each worked alone.

The parties also dispute why and for how long Vaul was removed from injection molding on Delashmutt's shift. Delashmutt contends the reassignment was permanent, and was made because Vaul was "bored" and because the blow molding department was short-staffed, while only three machines were then running in injection molding. Wis–Pak contends that the reassignment was temporary, so that Vaul could perform training of two new employees. Delashmutt challenges this assertion, because she states that training was normally provided by another employee, Nancy Certain, not Vaul.

Next, Delashmutt asserts that there are genuine issues of material fact as to the frequency with which she sought assistance and the manner in which her requests were greeted. She contends that she frequently asked for assistance, but that her supervisor, Swanson, and Filson "ignored" or "brushed aside" her requests. Wis–Pak asserts that Delashmutt made no more than a few requests for assistance, which garnered some assistance, before simply quitting.

Finally, Delashmutt also contends, over Wis–Pak's objections, that she was the subject of rumors about who was sabotaging the dryer. In her deposition, she stated that another employee "emphasized" her belief that she was suspected of the tampering by not responding when Delashmutt voiced her concern. Delashmutt asserts that she was told by another employee that her supervisor believed she was the saboteur and the supervisor had "set her up" to prove it by checking dryer settings during Delashmutt's shift. However, there is no evidence of an investigation of the alleged sabotage or any specific allegations by management personnel that Delashmutt was responsible for it.

## IV. LEGAL ANALYSIS

### A. Delashmutt's Claims

Delashmutt contends not only that she was subjected to sexual harassment by a co-employee, but that she was retaliated against, and ultimately constructively discharged, after she reported the sexual harassment to her employer. Indeed, Delashmutt has pleaded sexual harassment, retaliation, and constructive discharge in a single count in her complaint. Nonetheless, the court—and apparently Wis–Pak as well—has understood Delashmutt to be asserting three separate claims: (1) her employer's liability for sexual harassment by a co-worker, Scott Keller; (2) retaliation for reporting sexual harassment; and (3) constructive discharge. The extent

to which these claims are overlapping or distinct requires some further discussion.

First, as the court understands Delashmutt's complaint and arguments in resistance to summary judgment, she is attempting to hold Wis–Pak liable for sexual harassment solely on the basis of conduct by Scott Keller—sexual comments and propositions—on August 14 and 15, 1995, not for any sexually harassing conduct by other employees or agents of Wis–Pak after that date. Wis–Pak's liability, in those circumstances, as will be considered in more detail below, turns on whether Wis–Pak's response to the harassment by Keller was "reasonably calculated to end the harassment." *See, e.g., Hathaway v. Runyon,* 132 F.3d 1214, 1222 (8th Cir.1997). Delashmutt's retaliation and constructive discharge claims, however, are based on other conduct occurring after Delashmutt reported the harassment by Keller. Therefore, although those claims are distinct from Delashmutt's sexual harassment claim, they may be related to each other.

■ Briefly, the elements of Delashmutt's retaliation claim are the following: (1) she filed a charge of harassment or engaged in other protected activity; (2) her employer subsequently took adverse employment action against her; and (3) the adverse action was causally linked to her protected activity. *See, e.g., Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997) (citing *Cram v. Lamson & Sessions, Co.,* 49 F.3d 466, 474 (8th Cir.1995)). As the Eighth Circuit Court of Appeals has explained, "Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation." *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 497 (8th Cir.1995) (citing *Landgraf v. USI Film Prods.,* 968 F.2d 427, 431 (5th Cir.1992), *aff'd on other grounds,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Jordan v. Clark,* 847 F.2d 1368, 1377 n. 10 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989)). To prove a constructive discharge, the plaintiff must prove that her employer rendered the employee's working conditions intolerable, forcing the employee to quit. *See Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,* 130 F.3d 349, 354 (8th Cir. 1997).[3]

However, as the court understands Delashmutt's complaint and arguments in resistance to summary judgment, Delashmutt does not allege that the adverse employment action constituting retaliation was a constructive discharge. Rather, it appears that she alleges that the retaliatory conduct—adverse employment actions such as making her do a two-person job by herself after she reported sexual harassment—ultimately *also* caused her constructive discharge. Therefore, whether the retaliatory conduct also caused a constructive discharge is pertinent primarily as to the extent of Delashmutt's damages from retaliation.[4]

■ The provision of Title VII that prohibits retaliation provides as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). The statute is thus violated by *adverse* employment action in retaliation for protected activity. *See Manning,* 127 F.3d at 692 ("The retaliation provision of 42 U.S.C. § 2000e–3(a) does not itself contain language requiring a materially adverse employment action in order to state a claim. This requirement is inferred from the basic prohibition of employment discrimination set forth in 42 U.S.C. § 2000e2(a)(1)-(2). *See McDonnell v. Cisneros,* 84 F.3d 256, 258–59 (7th Cir.1996)."). Neither the statute nor judicial interpretations of the statute require

---

3. The court will consider the elements of Delashmutt's claims of retaliation and constructive discharge in greater detail in subsequent sections of this legal analysis.

4. It does not appear from the complaint that Delashmutt is also attempting to plead an independent constructive discharge claim by asserting that the constructive discharge resulted from discrimination based on sex.

that the "materially adverse employment action" be a termination or also rise to the level of making the workplace so *intolerable* that a constructive discharge results. *Cf. id.* ("[A]ctions short of termination may constitute an adverse employment action within the meaning of [42 U.S.C. § 2000e–3(a)] ."); *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1060 (8th Cir.1997) ("[R]etaliatory conduct may consist of 'action less severe than outright discharge,'" quoting *Dortz v. City of New York,* 904 F.Supp. 127, 156 (S.D.N.Y.1995)). The court concludes that conduct may be violative of the anti-retaliation provision of Title VII, even if that adverse action did not *also* make an employee's working conditions sufficiently intolerable to prompt her constructive discharge. Thus, Delashmutt can prove retaliation without necessarily proving a constructive discharge. Proof of a constructive discharge as the result of retaliatory conduct, however, may have a significant effect on the extent of Delashmutt's damages from retaliation. However, if Delashmutt cannot prove retaliation, because she cannot prove any adverse employment action, then she necessarily cannot prove her employer made her working environment so intolerable as to establish any independent constructive discharge claim.[5]

### B. Employer Liability For Sexual Harassment

#### 1. The prompt remedial action requirement

Delashmutt's first claim asserts Wis–Pak's liability for the sexually hostile environment created by a co-worker, Scott Keller. "Once an employee complains to her employer about sexual harassment by a co-worker, the employer is on notice and must take proper remedial action to avoid liability under Title VII." *Hathaway v. Runyon,* 132 F.3d 1214, 1222 (8th Cir.1997) (citing *Davis v. Tri–State Mack Distrib., Inc.,* 981 F.2d 340, 343 (8th Cir.1992)); *Zirpel v. Toshiba Am. Info. Sys., Inc.,* 111 F.3d 80, 81 (8th Cir.1997) (also finding an employer must take prompt remedial action after it knew or should have known of harassment). In addition to conducting an investigation, the em-

ployer must take "'prompt remedial action reasonably calculated to end the harassment.'" *Hathaway,* 132 F.3d at 1222 (again citing *Davis,* 981 F.2d at 343); *Zirpel,* 111 F.3d at 81 (the district court properly granted summary judgment in an employer's favor because the employer "promptly took 'remedial action ... reasonably calculated to end the harassment'" once it knew or should have known about a harassing co-employee's behavior, citing *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)). The employer cannot avoid liability by doing nothing simply because the co-worker denies that the harassment occurred. *Hathaway,* 132 F.3d at 1222 (citing *Fuller v. City of Oakland,* 47 F.3d 1522, 1529 (9th Cir.1995)). Indeed, an employer may take remedial action even where a complaint is uncorroborated. *Id.* (citing *Knabe v. Boury Corp.,* 114 F.3d 407, 409, 413 & n. 11 (3d Cir.1997)).

Options for appropriate remedial action include taking disciplinary action to stop the harassment; transferring the alleged harasser to a different area where he or she would not come in contact with the complainant; scheduling the individuals involved on different shifts; putting a signed written warning or reprimand in personnel files; or placing the offending employee on probation pending any further complaints. *Id.* (citing *Knabe,* 114 F.3d at 413; *Zirpel,* 111 F.3d at 81; *Intlekofer v. Turnage,* 973 F.2d 773, 780 & n. 9 (9th Cir.1992); *Ellison v. Brady,* 924 F.2d 872, 881–82 (9th Cir.1991); *Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 426 (8th Cir.1984)).

#### 2. Wis–Pak's response to harassment by Keller

Wis–Pak's response to Delashmutt's complaint of harassment by Keller was undisputably "reasonably calculated to end the harassment": Keller was given the option of resigning or being fired, and his employment with Wis–Pak ended. *See Hathaway,* 132 F.3d at 1222 (the employer must take prompt remedial action reasonably calculated to end the harassment). However, Delashmutt

5. Again, the court does not read Delashmutt's complaint to assert an independent constructive

discharge claim based on discrimination—as opposed to retaliation—by Wis–Pak.

complains that she had to wait too long for Wis–Pak's response to her complaint. *See id.* (requiring "prompt" remedial action).

The court concludes, however, that Delashmutt has failed to generate a genuine issue of material fact that Wis–Pak's response was not sufficiently "prompt." FED. R. CIV. P. 56(e) (to avoid summary judgment, the non-movant must generate a genuine issue of material fact based on affidavits, "depositions, answers to interrogatories, and admissions on file"); *Celotex,* 477 U.S. at 324 (to avoid summary judgment, the non-movant must designate "specific facts showing that there is a genuine issue for trial"); *Rabushka ex .rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3435 (Dec. 15, 1997) (No. 97–998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Keller, the alleged harasser, was terminated just fifteen days after Delashmutt reported the harassment, there were no intervening incidents of harassment, and it does not even appear that Keller ever worked the same shift with Delashmutt between August 15, 1995, and the date of his termination.

Because Delashmutt cannot generate a genuine issue of material fact that Wis–Pak's response to her complaint was not sufficiently prompt or was not reasonably calculated to end the harassment, Wis–Pak is entitled to summary judgment on Delashmutt's claim for Wis–Pak's liability for Keller's sexual harassment. *See* FED. R. CIV. P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ."). *See also Zirpel,* 111 F.3d at 81 (an employer was entitled to summary judgment on a sexual harassment claim where the employee could not establish an essential element of her claim, because the employer took prompt remedial action). The court therefore turns to consideration of Delashmutt's claims that Wis–Pak is nonetheless liable for violations of Title VII, because Wis–Pak subsequently retaliated against her for complaining of. sexual harassment, and

that those retaliatory actions eventually resulted in her constructive discharge.

## C. Retaliation

### 1. Proof of retaliation

Again, the elements of Delashmutt's retaliation claim are the following: (1) she filed a charge of harassment or engaged in other protected activity; (2) her employer subsequently took adverse employment action against her; and (3) the adverse action was causally linked to her protected activity. *Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997) (citing *Cram v. Lamson & Sessions, Co.,* 49 F.3d 466, 474 (8th Cir.1995)); *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1060 (8th Cir.1997) ("The elements of a retaliation claim under § 1981 and Title VII are (1) protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two. *See Barge v.. Anheuser–Busch, Inc.,* 87 F.3d 256, 259 (8th Cir.1996) (§ 1981 retaliation claim); *Kobrin [v. University of Minnesota],* 34 F.3d [698,] 704 [(8th Cir.1994)] (Title VII retaliation claim)."); *Harris v. Secretary, U.S. Dep't of the Army,* 119 F.3d 1313, 1318 (8th Cir.1997) ("To establish a prima facie case of retaliation, [the employee] needed to show: 1) she complained of discrimination; 2) the [employer] took adverse employment action against her; and 3) the adverse action was causally related to her complaint."); *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir.1997) (also describing these elements of a *prima facie* showing of retaliation); *Davis v. City of Sioux City,* 115 F.3d 1365, 1369 (8th Cir.1997) ("To prove unlawful retaliation, [the employee] must show that she complained of discrimination, the [employer] took adverse action against her, and the adverse action was causally related to her complaint," citing *Marzec v. Marsh,* 990 F.2d 393, 396 (8th Cir.1993)); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1266 (8th Cir.1997) (also describing these elements as establishing a *prima facie* case of retaliation). Once this *prima facie* showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears. *Manning,* 127 F.3d at 692

(citing *Jackson v. Delta Special Sch. Dist. No. 2*, 86 F.3d 1489, 1494 (8th Cir.1996)); *Harris*, 119 F.3d at 1318 (also citing *Jackson*); *Moschetti*, 119 F.3d at 709 (explaining this burden-shifting analysis, citing *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir.1996)); *Montandon*, 116 F.3d at 359. The factfinder is then "left to determine if [the employee] presented evidence capable of proving that the [employer's] proffered reasons for termination were a pretext for illegal retaliation." *Harris*, 119 F.3d at 1318. *Accord Moschetti*, 119 F.3d at 709; *Montandon*, 116 F.3d at 359. In this case, however, Wis–Pak contends that Delashmutt cannot establish even her *prima facie* case of retaliation, or, if she can, that she cannot call into question Wis–Pak's legitimate reason for the allegedly retaliatory actions.

### 2. *Delashmutt's evidence of "adverse action"*

■ Delashmutt undeniably engaged in protected activity when she complained of Keller's harassment. *See* 42 U.S.C. § 2000e–3(a) (prohibiting retaliation because the employee "has opposed any practice made an unlawful employment practice by this subchapter" or "has made a charge" of harassment). The court will also assume that Delashmutt can establish the causal connection element of her *prima facie* case, because of the relatively brief period between her complaint of harassment and the allegedly retaliatory conduct—just three or four weeks with the alleged retaliation beginning as soon as Delashmutt returned from a ten-day vacation. *See Kim*, 123 F.3d at 1061 (where the employer was aware of the protected activity and adverse employment action "followed the protected activity so closely in time as to justify an inference of retaliatory motive," that evidence was sufficient to establish the requisite causal connection between the protected activity and the adverse employment action, citing *Rath v. Selection Research,*

*Inc.*, 978 F.2d 1087, 1090 (8th Cir.1992), and *Kobrin*, 34 F.3d at 704). The element of Delashmutt's retaliation claim upon which Wis–Pak focuses its attack is the requirement of adverse employment action. It is on this element that the court will also focus.

■ "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997). *See also Manning*, 127 F.3d at 692 (quoting *Montandon*). Although, as the court observed above, the adverse action does not have to be a discharge, *see Manning*, 127 F.3d at 692 ("[A]ctions short of termination may constitute an adverse employment action within the meaning of [42 U.S.C. § 2000e–3(a)]."); *Kim*, 123 F.3d at 1060 ("[R]etaliatory conduct may consist of 'action less severe than outright discharge,'" quoting *Dortz*, 904 F.Supp. at 156), the allegedly retaliatory conduct must nonetheless be "'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or][c]hanges in duties or working conditions that cause no materially significant disadvantage." *Kim*, 123 F.3d at 1060 (some internal quotations and citations omitted) (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994), and *Thomas v. St. Luke's Health Sys., Inc.*, 869 F.Supp. 1413, 1435 (S.D.Iowa 1994), *aff'd*, 61 F.3d 908, 1995 WL 416214 (8th Cir.1995) (table) (No. 94–4081)). In *Kim*, the Eighth Circuit Court of Appeals explained that what the court must look for is "the kind of serious employment consequences that adversely affected or undermined [the employee's] position, even if [s]he was not discharged, demoted or suspended." *Kim*, 123 F.3d at 1060. Furthermore, the court may examine the cumulative effect of the employer's allegedly retaliatory actions, rather than determining whether any individual action upon which the claim relies was sufficiently adverse. *Id.*[6]

6. Although nothing comparable is alleged here, as background it is perhaps worth noting the kinds of adverse actions the Eighth Circuit Court of Appeals found in *Kim* would support a retaliation claim. *Kim*, 123 F.3d at 1060. Those adverse actions included reduction in duties, lower performance evaluations than before the employee complained of discrimination or harassment, "remedial" training, and "papering" of the employee's personnel file with negative reports. *Id.* In *Davis*, the Eighth Circuit Court of Appeals upheld a jury verdict in the employee's favor on her retaliation claim, even though the new position to which she was transferred, allegedly in retaliation, paid more, because the new position lacked supervisory status, had fewer opportuni-

Wis–Pak relies principally on *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379 (8th Cir.1994), for the proposition that Delashmutt cannot establish adverse employment action as a matter of law on the basis of stress or temporary assignment of her co-worker in injection molding to other tasks leaving Delashmutt to work what had been a two-person position on her own. In *Harlston*, the defendant contended on summary judgment that the plaintiff could not establish an adverse employment action based on reassignment in support of her age discrimination claim. *Harlston*, 37 F.3d at 382. The "substance" of the plaintiff's complaint of adverse action was that she was reassigned to a position that "involved fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area." *Id.* The court, however, held that "[t]his describes nothing 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). The court explained, "Changes in duties or working conditions that cause no materially significant disadvantage, such as [the plaintiff's] reassignment, are insufficient to establish the adverse conduct required to make a prima facie case." *Id. Accord Kim*, 123 F.3d at 1060 (quoting *Harlston*).

Wis–Pak contends that the change in working conditions here also did not cause any "materially significant disadvantage" to Delashmutt, because the position in which she worked had routinely been performed by one rather than two persons prior to Delashmutt's transfer to that position, and one person could reasonably be expected to run nearly twice as many injection molding machines as Delashmutt was required to run alone. Delashmutt contends that permanently doubling her workload, with the attendant stress that resulted, as well as ignoring her requests for assistance, at a minimum generates a genuine issue of material fact as to whether her working conditions were materially and significantly disadvantaged.

The court agrees *Harlston* does not require summary judgment in Wis–Pak's favor, because Delashmutt has presented enough evidence to generate fact questions on whether the changes in her job were "more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Harlston*, 37 F.3d at 382. Leaving aside the parties' disagreement over whether the change of staffing in Delashmutt's position from two people to one person was permanent or temporary, a jury question is certainly engendered on whether essentially doubling a person's workload for more than a brief period imposes more than "mere inconvenience." *Cf. Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 273 (7th Cir.1996) ("The question of whether a change in an employee's job or working conditions is materially adverse, rather than essentially neutral, is one of fact, . . . and so can be resolved on summary judgment only if the question is not fairly contestable."). A jury should also decide the weight to be given Mr. Filson's affidavit and other evidence supporting Wis–Pak's contention that one person could reasonably operate seven or eight machines, in light of Delashmutt's contrary evidence that she was falling behind running four machines by herself and the fact that Wis–Pak had itself adjusted the number of persons assigned to injection molding to accommodate, at least in part, the addition of another machine. In short, Delashmutt has asserted an issue of fact with a "real basis" in the record that is material to the outcome of her retaliation claim under governing law, and summary judgment on the ground that Delashmutt cannot generate genuine issues of material fact on her *prima facie* case must be denied. *Anderson*, 477 U.S. at 248 (a factual dispute is "material," and will therefore preclude summary judgment, if it "might affect the outcome of the suit under the governing law"); *Beyerbach*, 49 F.3d at 1326 (same); *Hartnagel*, 953 F.2d at 394 (same, adding that factual disputes must

ties for salary increases, and offered the employee little opportunity for advancement. *Davis*,

115 F.3d at 1369.

have a "real basis" in the record to be genuine).[7]

### 3. Evidence of pretext

Assuming that the change in staffing of Delashmutt's job from two people to one was sufficiently adverse to establish the second element of her *prima facie* case of retaliation, Wis–Pak contends that Delashmutt cannot generate a genuine issue of material fact that the change was not for a legitimate reason, and therefore she lacks any evidence of pretext. *See Montandon,* 116 F.3d at 359–60 (finding the employee had failed to establish adverse employment action, but assuming that she had established her *prima facie* case, considering whether she had established the employer's explanation for allegedly adverse action was a pretext for retaliation). In *Moschetti,* considering this third stage of the analysis on summary judgment, the Eighth Circuit Court of Appeals explained, "The question at this stage is whether [the employee] presented enough evidence to allow a reasonable fact finder to infer that intentional discrimination, rather than the proffered explanation, was the real reason for [the adverse action]." *Moschetti,* 119 F.3d at 710 (citing *Rothmeier,* 85 F.3d at 1336–37, and *Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997)).

The summary judgment record contains sufficient evidence of legitimate reasons for the change in staffing on Delashmutt's position to require Delashmutt to attempt to rebut Wis–Pak's explanation. *See, e.g., Manning,* 127 F.3d at 692 (if the employer articulates a legitimate, non-retaliatory reason for its actions, the presumption of retaliation disappears); *Harris,* 119 F.3d at 1318 (if a legitimate reason is articulated, the factfinder is then "left to determine if [the employee] presented evidence capable of proving

that the [employer's] proffered reasons for termination were a pretext for illegal retaliation"). *Accord Moschetti,* 119 F.3d at 709; *Montandon,* 116 F.3d at 359. Wis–Pak has presented evidence that indicates Delashmutt's position had been staffed by only one person per shift prior to April of 1995; managers reasonably believed the position could be handled by only one person after that time; the assignment of another person to injection molding on each shift was, at least in part, to increase staffing for the entire crew with someone who was nominally assigned to injection molding, but who could "float" to other positions as required; and further evidence that Vaul, Delashmutt's coworker, was only temporarily assigned to training duties in other areas, not permanently pulled away from injection molding.

Delashmutt's evidence of intentional retaliation and pretext, *see Moschetti,* 119 F.3d at 710; *Ryther,* 108 F.3d at 836; *Rothmeier,* 85 F.3d at 1336–37, consists of evidence that her requests for assistance when she felt she was falling behind were either ignored or brushed off by Swanson, her immediate supervisor, and Filson, the director of operations, in contrast to the latter's prior notice to employees that he had an "open door" policy. A factfinder could reasonably infer from this evidence that Delashmutt was suddenly given double duty, then her requests for assistance were ignored, in order to punish her for complaining about sexual harassment. Therefore, the court concludes that Wis–Pak is not entitled to summary judgment on Delashmutt's retaliation claim on the ground that she cannot generate a fact question on pretext. *See* FED. R. CIV. P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

7. Because the court finds that a genuine issue of material fact precludes summary judgment on Delashmutt's retaliation claim based on the degree of adversity the change in her job entailed, the court will not consider in detail the parties' contentions that there is no genuine issue of material fact on Delashmutt's further claim of adverse action in the form of targeting her as the perpetrator of sabotage. The court finds little

evidence in support of this claim of adverse or retaliatory action, but it is persuaded that a fact issue for a jury has nonetheless been generated by Delashmutt's designation of testimony of Jeanne Pullis concerning Swanson's statements that she believed Delashmutt was responsible for tampering with the dryers and had "set up" Delashmutt to see if she was doing the tampering.

matter of law.").[8]

### D. Constructive Discharge

#### 1. Proof of constructive discharge

Because Delashmutt has generated a genuine issue of material fact that she was retaliated against with adverse employment actions, the court must also consider whether Delashmutt has generated genuine issues of material fact that those adverse actions ultimately led to her constructive discharge. "'A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit.'" *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 354 (8th Cir.1997) (quoting *Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568, 574 (8th Cir.1997)); *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1290 (8th Cir.1997) ("[T]o make a prima facie case [of constructive discharge] the three plaintiffs have the burden of showing that the working conditions at the mine were so intolerable that they were compelled to resign," citing *Gartman v. Gencorp, Inc.*, 120 F.3d 127, 129–30 (8th Cir.1997); *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir.1996)); *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996) (citing the *"Bunny Bread"* standards for this kind of claim found in *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981)); *Parrish v. Immanuel Medical Ctr.*, 92 F.3d 727, 732 (8th Cir.1996) (same); *Bradford v. Norfolk S. Corp.*, 54 F.3d 1412, 1420 (8th Cir.1995) (same); *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir.1995) (same); *Smith v. World Ins. Co.*, 38 F.3d 1456, 1460 (8th Cir.1994) (same); *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284 (8th Cir.1993) (same).

■■■■ "'[I]ntolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings.'" *Gartman v. Gencorp, Inc.*, 120 F.3d 127, 130

(8th Cir.1997) (quoting *Allen*, 81 F.3d at 796). First, the conditions created by the employer must be such that a reasonable person would find them intolerable. *See Gartman*, 120 F.3d at 130; *Tidwell*, 93 F.3d at 494; *Parrish*, 92 F.3d at 732; *Allen*, 81 F.3d at 796; *Bradford*, 54 F.3d at 1420; *Smith*, 38 F.3d at 1460; *Hukkanen*, 3 F.3d at 284. Second, the employer's actions "must have been deliberate, that is, they 'must have been taken with the intention of forcing the employee to quit.'" *Delph*, 130 F.3d at 354 (quoting *Bunny Bread*, 646 F.2d at 1256); *Gartman*, 120 F.3d at 130; *Tidwell*, 93 F.3d at 494; *Parrish*, 92 F.3d at 732; *Allen*, 81 F.3d at 796; *Smith*, 38 F.3d at 1461; *Hukkanen*, 3 F.3d at 284. The Eighth Circuit Court of Appeals has explained that, "in the absence of conscious intent ..., the intention element may nevertheless be proved with a showing that the employee's 'resignation was a reasonably foreseeable consequence' of the [discriminatory or retaliatory conduct]." *Delph*, 130 F.3d at 354 (quoting *Hukkanen*, 3 F.3d at 285); *Gartman*, 120 F.3d at 130 (also citing *Hukkanen*). Finally, "to act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly"; therefore, "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *West*, 54 F.3d at 498.

#### 2. Delashmutt's evidence of constructive discharge

■■■■ The court concludes that Delashmutt has generated genuine issues of material fact precluding summary judgment in Wis–Pak's favor on her constructive discharge claim. First, Delashmutt's evidence that Wis–Pak essentially doubled her workload, then denied or ignored her requests for assistance, generates a genuine issue of material fact that a reasonable person would find condi-

---

8. The court is sympathetic to Wis–Pak's contention that the entire scenario of retaliation is unlikely when Wis–Pak responded to Delashmutt's complaint about sexual harassment by promptly terminating the harasser. However, on a motion for summary judgment, the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Quick*, 90 F.3d at 1376–77; *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). It is conceivable that an employer could rid itself of a short-term problem by firing an alleged harasser, then attempt to rid itself of the long-term problem of the complaining person *if* it perceived that person to have the potential to be a chronic complainer.

tions created by Wis–Pak were intolerable. *See Gartman,* 120 F.3d at 130; *Tidwell,* 93 F.3d at 494; *Parrish,* 92 F.3d at 732; *Allen,* 81 F.3d at 796; *Bradford,* 54 F.3d at 1420; *Smith,* 38 F.3d at 1460; *Hukkanen,* 3 F.3d at 284. Furthermore, on the issue of Wis–Pak's intent to force Delashmutt to quit, Delashmutt's evidence that Wis–Pak representatives Swanson and Filson ignored or brushed aside her requests for assistance also generates a genuine issue of material fact as to whether " 'resignation was a reasonably foreseeable consequence' of the [retaliatory conduct]." *Delph,* 130 F.3d at 354 (quoting *Hukkanen,* 3 F.3d at 285). It is reasonably foreseeable that a person who finds all of her attempts to improve intolerable working conditions foreclosed will quit, rather than continue to suffer the intolerable conditions. Although Wis–Pak suggests that Delashmutt was too hasty in quitting her job, Delashmutt's evidence that she attempted to draw the problem to the attention of her supervisor and management personnel, but her attempts were brushed aside or ignored, also generates a genuine issue of material fact as to whether she had given her employer "a reasonable chance to work out a problem." *West,* 54 F.3d at 498. If an employer refuses to hear complaints, an employee could reasonably believe that the employer will make no effort to work out the problem.

Therefore, Wis–Pak is not entitled to summary judgment on Delashmutt's claim that she was constructively discharged. *See* Fed. R. Civ. P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

## V. CONCLUSION

Wis–Pak is entitled to summary judgment on Delashmutt's claim of employer liability for permitting a sexually hostile environment. The undisputed record reveals that Wis–Pak responded promptly and decisively to Delashmutt's complaints of Keller's harassment by instituting an investigation within ten days and resolving the matter, approximately two weeks after the alleged

harassment, by giving Keller the choice of resigning or being fired.

However, Wis–Pak is *not* entitled to summary judgment on Delashmutt's claim of retaliation or her companion contention that adverse employment actions intended as retaliation ultimately led to her constructive discharge. A jury question is certainly engendered on whether essentially doubling a person's workload for more than a brief period imposes more than "mere inconvenience," and hence constitutes the kind of adverse employment action that will sustain a retaliation claim. Furthermore, Delashmutt has engendered a jury question on whether Wis–Pak's legitimate reason for the change in staffing is pretextual with evidence that her requests for assistance when she felt she was falling behind were either ignored or brushed off by her superiors. A factfinder could reasonably infer from this evidence that Delashmutt was suddenly given double duty, then her requests for assistance were ignored, in order to punish her for complaining about sexual harassment. Similarly, evidence that her employer doubled her workload, then denied or ignored her requests for assistance, generates a genuine issue of material fact that a reasonable person would find conditions created by Wis–Pak were intolerable, thus prompting a constructive discharge, while it is reasonably foreseeable that a person who finds all of her attempts to improve intolerable working conditions foreclosed will quit, rather than continue to suffer the intolerable conditions.

Therefore, Wis–Pak's motion for summary judgment is **granted** as to Delashmutt's claim of a hostile environment, but the motion is otherwise **denied.**

**IT IS SO ORDERED.**